ROBERTA. CHAISSON, Judge.
12This is an appeal by Favalora Constructors, Inc., an employer, and LUBA, its insurer, from a judgment in this workers’ compensation action awarding benefits, penalties and attorney fees to Donald Scardino, an employee injured in a workplace accident. For the following reasons, we affirm the award of benefits, but vacate the awards for penalties and attorney fees.
*938 Mr. Scardino spent most of the thirty-six years of his working life in the various construction trades. He eventually was employed by Favalora in late 2006, as a construction site superintendent. On May 19, 2008, while moving a portable on-site water meter, he reportedly wrenched something in his back. He reported the injury to his employer that morning and was instructed to seek medical attention. He initially reported for an emergency room examination, and was referred to his treating physicians. It was eventually determined that he has been disabled from working since the time of that incident due to spinal disc injuries, and that he will need surgery if his condition is to improve.
| ¡¡Mr. Scardino sought workers’ compensation benefits from his employer and LUBA. Other than payment for the initial emergency room treatment, his application was denied. After a hearing before a workers’ compensation judge, judgment was entered in his favor. That judgment included the following findings of fact:
From all of the above [evidence] the Court finds that Claimant was a credible witness; that he was involved in an accident at work on May 19, 2008, while in the employ of Favalora Constructors, Inc.; that said accident was witnessed; that Scardino suffered an injury to his lower back as a result of said accident; that his average weekly wage of $1,040.00 would entitle him to the maximum compensation rate as of the date of his injury of $522.00 per week; that he did not make a false statement for the purpose of receiving workers’ compensation benefits; that he is temporarily totally disabled; that he has received no weekly indemnity benefits to date; that of his medical costs to date, only his initial emergency room visit has been paid; that no mileage benefits have been paid; that the Employer/Insurer have failed to reasonably contravene Scardi-no’s workers’ compensation claim, and that penalties and attorney fees would be due under these circumstances.
Based on the above findings, the judge ordered the employer/insurer to pay all weekly indemnity benefits from the time of the accident, as well as all medical bills and related mileage. He imposed penalties of $8,000.00, and awarded attorney fees of $13,000.00. Favalora and LUBA now appeal. Mr. Scardino, for his part, seeks additional awards for attorney fees and costs occasioned by this appeal.
Six of appellants’ seven assignments of error raise issues involving the trial judge’s factual determinations. The standard of appellate review of factual determinations is manifest error. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). In Stobart, the court explained this standard as follows:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” This court has announced a two-part test for the reversal of a factfinder’s determinations:
|41) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was *939 a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that the reviewing court must always keep in mind that if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
This court has recognized that the reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. (Citations omitted)
Thus, in order to reverse the judgment in the present case, we must find that no reasonable factual basis existed for the findings of the trier of fact, and also that based on the record those findings were manifestly erroneous.
The pertinent facts are these. As noted above, Mr. Scardino was hired by Favalora in late 2006, as a site superintendent. He was supervising a crew in the construction of the foundation of a self-storage facility. He testified that a part of | Bhis duties was to open the tool shed in the mornings and get the equipment for the day organized for the crew. On May 19, 2008, he picked up the portable water meter being used on the job to put it on a front-end loader for transportation to the hook up point. As he put it down, he felt something “pop” in his back, accompanied by pain in his lower back radiating down his right leg. There were at least three other workers at the scene when the accident happened. Mr. Scardino phoned his immediate supervisor to tell him of the accident, and he was instructed to seek medical attention.
Later that morning, Mr. Scardino reported to the North Oaks Medical Center in Hammond, Louisiana, a facility near his home. The initial clinical impression was “back strain.” He was discharged with instructions to see his own doctor. Three days later, he saw his family physician, Dr. David Gaudin. This doctor’s initial impression was “lumbosacral radiculitis with chronic pain syndrome.” He suggested that Mr. Scardino see Dr. Fred DeFran-cesch, a pain specialist who had been treating him for several years.
Dr. DeFrancesch testified by way of deposition. He stated that he had first seen Mr. Scardino in January of 2004, for complaints of left lower back pain, and the original diagnosis included lumbar pain, low back pain and sacroiliac joint dysfunction. He treated him conservatively with medication for these conditions through early 2008. He said that Mr. Scardino had intermittent mild pain radiating into the leg, but found “nothing neurologically prominent.” He noted that on a November 27, 2007, visit, Mr. Scardino reported that he had been in an .automobile accident on November 16, 2007, and had some dif *940 fuse soreness in his neck and back traveling up and down the spine. However, the doctor found “no red flags for low back pain or back pain,” and diagnosed cervical and lumbar strain. Mr. Scardino was given muscle relaxers for these problems through January of 2008. | ^During the entire period between 2004 and early 2008, the doctor never took him off work for any of the conditions for which he was treating him.
On February 14, 2008, Dr. DeFrancesch ordered an MRI which was conducted by Dr. Lawrence W. Glorioso, III. The injury at issue here occurred on May 19, 2008-, and a second MRI was done by Dr. Glorio-so on June 6, 2008. It was Dr. DeFran-cesch’s opinion that the second MRI showed changes for the worse, especially at the L5-S1 level, that he related to the work injury of May 19, 2008. He further elaborated, that to control Mr. Scardino’s increased pain, he eventually prescribed pain medication at about triple the dosage from the period prior to the injury. He concluded that Mr. Scardino remains disabled and that surgery is recommended for problems at the L4-L5 and L5-S1 levels.
On June 26, 2008, Mr. Scardino was examined by Dr. Bradley Bartholomew, a neurological surgeon, who also testified by way of deposition. This examination was arranged by the law firm representing Mr. Scardino in a suit arising out of the automobile accident of November 16, 2007. This doctor reviewed both of the MRIs and concluded that they were basically the same. He recited that Mr. Scardino told him of the automobile accident, but did not mention the workplace accident of May 19, 2008. He therefore assumed that the problems which were manifested at the L5-S1 level were related to the first accident. When, during the deposition, he was informed of the second accident and of Dr. DeFrancesch’s opinions, he said that he would defer to those opinions because Dr. DeFrancesch was the treating physician before the first MRI and also after the second one. His conclusion as to treatment was that surgery was recommended.
Yet another medical report, prepared by orthopaedic surgeon Dr. David Aiken, Jr., was introduced at the hearing. It was this doctor’s opinion that the second MRI of June 6, 2008, showed no changes from the MRI of February 14, 2008. He also 17mentions the automobile accident twice in the report, but makes no mention of the workplace accident of May 19, 2008. The report does recite that Mr. Scardino mentioned going to the North Oaks emergency room sometime after the automobile accident, and said he had not worked since May 8, 2008, because of low back pain. This doctor’s general findings were that Mr. Scardino suffers from long-standing degenerative disc disease. His final conclusion was that “I do not find any objective evidence that the patient is still suffering any low back problems from the reported motor vehicle accident of November 17 (sic.), 2007.”
Mr. Scardino testified that he had seen Dr. DeFrancesch for several years before either of the accidents at issue here. His general testimony was that he had been treated for upper and middle back pains and muscle spasms over this period. He admitted to some lower back pain, but described it as a “very little bit.” He also testified that whatever lower back pain he might have had prior to the workplace accident, it was minor compared to the pain he felt when he felt the “pop” in his back on the job. There were also seeming contradictions in his deposition and trial testimony, as well as in the alleged representations he had made to the various doctors, as to the injuries he may have suffered in the automobile accident. He testified, for example, that although the *941 reports of Drs. Bartholomew and Aiken addressed injuries from the auto accident, he in fact had not been injured in that accident. In other testimony, he qualified that statement by saying that he had experienced mild pain in his neck and back with headaches, but these symptoms had disappeared within several months.
Appellants also introduced a “post-employment” questionnaire which Mr. Scardi-no filled out on October 29, 2007, shortly after he began working for Favalora. Mr. Scardino testified that he did not recollect the document, but it is evident that he did sign it. On that document, there are check marks indicating that |she did not have the following pertinent conditions: ruptured disc(s), bulging disc(s), leg pain, sore back, back pain and back ache. The records from Dr. DeFranceseh indicate that Mr. Scardino did suffer from many of these symptoms. However, Mr. Scardi-no’s general testimony was that he had never suffered an injury causing these symptoms, had never missed work because of them, and had never made a workers’ compensation claim. When pressed on the point of whether he had had previous injuries, he responded:
No. I haven’t had a previous injury. My injuries are caused from being overworked, if you call it an injury. I call it being wore out.
Appellants urge in two of their assignments of error that because of the various discrepancies in Mr. Scardino’s testimony, it was manifest error for the trial judge to credit any of his testimony and to find that there had actually been a workplace accident. Because of the interrelated factual issues raised in these assignments, we will address them together.
As noted above, the first inquiry is whether the factual findings made by the trier of fact are reasonable on the entire record. Stobart v. State through DOTD, supra. Here, Mr. Scardino showed that he had never been involved in a workplace accident in his entire work life. Although he had missed an occasional hour or two from the job with Favalora, none of these absences were attributable to any workplace injuries. He recounted the circumstances of the May 19, 2008, accident in detail, and it was not contested that he immediately reported it to his employer. His son, who was standing a few feet away when the accident occurred, testified that his father was in obvious pain at the job site. Both Mr. Scardino and his wife testified to his disabling pain subsequent to the injury.
Dr. DeFranceseh testified that he saw Mr. Scardino after the automobile accident of November 16, 2007, and found some minor problems in the cervical |9and lumbar regions which he treated with muscle relaxers through January of 2008. Mr. Scardino lost no work because of this accident. He again saw Mr. Scardino in late May of 2008, and was of the opinion that he had suffered an accident in his lower back which was disabling. He further opined that an MRI done in early June of 2008, showed changes from the MRI taken in February of 2008, and that these changes supported his conclusion that there was a disabling injury between those dates. The doctor also noted that the dosage of medication necessary to control the post-May 19th pain symptoms was three times the dosage prior to that accident.
Dr. Bartholomew, who saw Mr. Scardino only once, originally testified that he saw no difference in the two MRIs. However, he apparently was unaware of the May 19, 2008, incident when he formed this opinion. When informed of that May 19, 2008, accident, as well as Dr. DeFranceseh’s conclusions, he stated that he would defer to Dr. DeFranceseh as the treating physician who *942 had seen Mr. Scardino for the period beginning before the automobile accident and continuing until after the workplace accident.
Dr. Aiken similarly saw Mr. Scardino only once. He indicated in his report that Mr. Scardino suffered from long-standing degenerative disc disease, and saw no difference between the two MRIs. For reasons not clear in the record, Dr. Aiken was operating under the assumption that he was seeing Mr. Scardino in regard to the automobile accident, and concluded that he had not been injured in that accident.
While admittedly Mr. Scardino gave sometimes conflicting testimony about his prior medical condition, as well as injuries suffered in the automobile accident, the trier of fact did not view these inconsistencies as being significant on the question of whether there was in fact a workplace injury on May 19, 2008. While this Court may well have made different factual findings on this point, that is not | mthe standard of review. Stobari v. State through DOTD, supra. Rather, the question is whether the facts found are based on a reasonable evaluation of the testimony and evidence of record, giving deference to the credibility determinations made by the trier of fact. Clearly, the findings that a disabling injury occurred on the job, and that Mr. Scardino is entitled to workers’ compensation benefits were reasonable, and we must therefore uphold those findings.
In two other assignments of error, appellants urge that Mr. Scardino forfeited entitlement to benefits pursuant to La. R.S. 23:1208 and 1208.1, in that he willfully made false statements or representations to obtain benefits, and made false statements on the employer’s medical questionnaire. In Wise v. J.E. Merit Constructors, Inc., 97-0684 (La.1/21/98), 707 So.2d 1214, the court explained the difference between these two anti-fraud forfeiture statutes. The first, La. R.S. 23:1208, applies to situations where during a pending claim a claimant makes a false statement or misrepresentation for the specific purpose of obtaining benefits, while the second, La. R.S. 23:1208.1, applies when a falsity is made on an employer’s medical questionnaire before the accident or injury. In either case, forfeiture of benefits is a harsh remedy, and these statutes are therefore to be strictly construed. Wise v. J.E. Merit Constructors, Inc., supra; see also Ocon v. Regency Motors of Metairie, LLC, 06-834 (La.App. 5 Cir. 4/11/07), 957 So.2d 816. Because of the differing applications of these two defenses, the employer’s burden of proof also differs. In the La. R.S. 23:1208 context, the employer has the burden of proving 1) a false statement or representation, 2) made willfully, 3) for the purpose of obtaining benefits. Where La. R.S. 23:1208.1 is applicable, the employer must prove that 1) an untruthful statement was made on the medical questionnaire, 2) that the statement prejudiced that employer, and 3) that the [ ii questionnaire was in compliance with the notice requirements of the statute. Ocon v. Regency Motors of Metairie, LLC, supra. When either defense is ruled upon in the workers’ compensation court, the standard of appellate review is that of manifest error. Ocon v. Regency Motors of Metairie, LLC, supra.
As to the La. R.S. 23:1208 issue, the trial judge found as a matter of fact that Mr. Scardino was a credible witness and did not lie or attempt to distort the truth in order to receive benefits. Appellants assert that this was manifest error because of various alleged inconsistencies in his testimony. They particularly point to the confusion in some of the medical testimony concerning injuries in the automobile accident and those in the workplace accident. We note, however, that Dr. De- *943 Francesch, the only physician who treated him before, during, and after the periods of time encompassing both accidents, testified concerning injuries resulting from both. As to the automobile accident, he stated that Mr. Scardino had some temporary soft tissue injuries in his neck and back which resolved within two months with muscle relaxers. He did not find any disability from work because of this accident, and Mr. Scardino continued working. This doctor was equally convinced that there was a subsequent disabling workplace injury.
Dr. Bartholomew saw Mr. Scardino only once on referral from his attorney in the automobile accident case, and apparently assumed that that was the purpose of the visit. When he learned of the workplace accident, he deferred to Dr. DeFrancesch’s opinion. Similarly, Dr. Aiken assumed that he was seeing Mr. Scardino about the automobile accident, and his report makes no mention of the workplace incident. The trial court did not find that the impressions these doctors had of the cause of Mr. Scardino’s low back pains were given by Mr. Scardino for the purpose of obtaining workers’ compensation benefits; therefore, as to these statements, La. R.S. 23:1208 is inapplicable. Because | ^resolution of these inconsistencies turned in great part upon evaluation of the credibility of Mr. Scardino, and because it was reasonable on the entire record to find him credible, we may not set aside those factual determinations as to the occurrence of the workplace accident and resulting disability.
Appellants also urge that Mr. Scar-dino lied on the employer’s medical questionnaire, and thus forfeited benefits as per La. R.S. 28:1208.1. As noted above, to prevail on this defense the employer must prove a false statement, which prejudiced it, and that the form complied with the statutory notice requirements. The notice requirements are not at issue here, and for purposes of this discussion, we assume that certain answers given by Mr. Scardi-no were not accurate. We thus focus on the question of whether the employer was prejudiced by those answers.
Appellants argue that they have been prejudiced by the misleading answers on the questionnaire because it prevents them from being reimbursed by the second injury fund. The purpose of the fund, stated at La. R.S. 23:1371(A)(1) is to “Encourage the employment, re-employment, or retention of employees who have a permanent partial disability [PPD].” In order to recover from the fund, the employer must “knowingly” employ a person with a PPD. La. R.S. 23:1378. In Wise v. J.E. Merit Constructors, Inc., the court explained that:
Reimbursement occurs when the employee has a PPD, when the employer has knowledge of the PPD, and when the PPD merges with a subsequent injury to result in a greater disability. La. R.S. 23:1378(A); La. R.S. 23:1371(A). According to La. R.S. 23:1378(F), the employer has the benefit of the presumption of the existence of a PPD when the condition is [one listed in the statute]. (Supra at 1221).
Here, the pertinent listing from La. R.S. 23:1378(F)(25) is “ruptured or herniated intervertebral disc.” To show prejudice, the employer bears the burden of proving, inter alia, that the PPD merged with the injury to produce a greater disability as required by La. R.S. 23:1378(A). Wise v. J.E. Merit Constructors, Inc., supra. Appellants argue that Mr. Scardino had a ruptured disc and that by denying this condition on the questionnaire, he forfeited his right to benefits. To prevail on this point, appellants bore the burden of proving that there was a pre-existing ruptured disc, and that this ruptured disc merged *944 with the subsequent accident to produce a greater disability.
The evidence relating to a pre-employment ruptured disc is as follows. Dr. De-Francesch testified that when he first saw Mr. Scardino in 2004, Mr. Sardino said that he had been told by his. previous doctor that he had a ruptured disc, but no particular disc was mentioned. Nowhere in Dr. DeFrancesch’s testimony is reference again made to a ruptured disc. Although Drs. Glorioso and Bartholomew mention herniated discs at several levels, Dr. Aiken, whose report was introduced by appellants, found herniations in the cervical and thoracic spine, but not in the lumbar spine. It was Dr. DeFrancesch’s opinion that the problem resulting from the workplace accident of May 19, 2008, was in the lower lumbar region, and not the cervical or thoracic regions where Dr. Aiken had identified the ruptured discs. While there was thus conflicting evidence as to whether Mr. Scardino had a ruptured disc at the level where the accident caused injury, it was reasonable on the entire record to find that his workplace injury did not merge with an existing PPD to produce a greater disability. In this circumstance, appellants did not carry their burden of showing that they would have been entitled to reimbursement from the second injury fund had the questionnaire been properly filled out, and in this circumstance no forfeiture under La. R.S. 23:1208.1 can occur.
The next issue concerns penalties and attorney fees. In Bordelon v. Cox Communications, 05-40 (La.App. 5 Cir. 5/31/05), 905 So.2d 1107, this Court noted that the inquiry as to awards for penalties and attorney fees in the workers’ | l4compensation context is whether the employer reasonably controverted the claim. This is a factual issue to be analyzed under the manifest error standard of review. Redler v. Giorlando’s Restaurant Corp., 07-658 (La.App. 5 Cir. 2/6/08), 979 So.2d 512. In the present case, appellants had evidence indicating that Mr. Scardino had made misrepresentations in the medical questionnaire, had reported at least some back symptoms from the automobile accident to Dr. DeFrancesch, and had potentially led Drs. Bartholomew and Aiken to believe that his symptoms after the workplace accident were related to the automobile accident. There were also reasonable questions raised about whether benefits had been forfeited under the provisions of La. R.S. 23:1208 and 1208.1. Considering all of these factors, it is this Court’s opinion that the imposition of penalties and attorney fees by the workers’ compensation judge was manifestly erroneous. We therefore set aside those awards. In this same regard, because of our disposition of this matter, we decline to award Mr. Scar-dino any attorney fees or costs for this appeal as requested, and instead determine that all parties shall bear their own costs.
The last two issues concern medical expenses. Appellants first argue that it was manifest error to award Mr. Scardino any medical expenses. Because we have affirmed the finding that Mr. Scardino suffered a work-related injury, appellants are liable for medical treatment as provided in the workers’ compensation laws. Appellants next argue that they are unable to determine which medical bills they are responsible for because the trial judge did not define or delineate specifically which bills they must pay. The record as developed in the trial court does not contain sufficient information for this Court to make any such detailed enumeration of which bills must be paid. We therefore remand the matter to the Office of Workers’ Compensation for consideration of this issue.
*945 | ifiFor the foregoing reasons, the judgment awarding workers’ compensation benefits to Donald Scardino is affirmed, the award of penalties and attorney fees against Favalora Constructors, Inc. and LUBA are set aside, and the matter is remanded for further proceedings consistent with this opinion. Additionally, the request for attorney fees for this appeal is denied.

AFFIRMED IN PART, REVERSED IN PART, REMANDED